**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BIRKENSTOCK US BIDCO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Civil Action No. 26-cv-05237 |

## COMPLAINT

Plaintiff Birkenstock US BidCo, Inc. ("Birkenstock" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), since each of the Defendants directly targets business activities toward consumers in the United States through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to United States residents by setting up and operating

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, accept payment in U.S. dollars from U.S. consumers, and have sold products using infringing and counterfeit versions of Birkenstock's federally registered trademarks to residents of the United States. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 2**. Each of the Defendants is committing tortious acts in the United States, is engaging in interstate commerce, and has wrongfully caused Birkenstock substantial injury in the United States.

## II. INTRODUCTION

3. This action has been filed by Birkenstock to combat e-commerce store operators who trade upon Birkenstock's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products, including footwear, clothing, skin care products, and other lifestyle accessories, using infringing and counterfeit versions of Birkenstock's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Birkenstock is forced to file this action to combat Defendants' counterfeiting of its federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Birkenstock has been and continues to be irreparably damaged through

consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Birkenstock US BidCo, Inc. is a Delaware corporation having its principal place of business at 100 Wood Hollow Drive, Suite 100, Novato, California, United States 95945.

5. The Birkenstock brand is steeped in history and tradition, with roots tracing back to 1774.

6. Birkenstock was introduced into the U.S. market in 1966 and has been operating in the U.S. for over fifty years.

7. Birkenstock is well-known throughout the United States and elsewhere as a source of high-quality footwear and related lifestyle products and accessories, including the iconic ARIZONA sandal and BOSTON clog (collectively, the "Birkenstock Products"). Birkenstock Products are distributed and sold through authorized retailers throughout the United States through Birkenstock brick and mortar stores, and online via the Birkenstock.com website.

8. Birkenstock incorporates a variety of distinctive marks in the design of its various Birkenstock Products. As a result of its long-standing use, Birkenstock owns common law trademark rights in its trademarks. Birkenstock's trademarks are also registered with the United States Patent and Trademark Office. Birkenstock Products typically include at least one of its federally registered trademarks. Birkenstock uses its trademarks in connection with the marketing of the Birkenstock Products, including the following federally registered marks, which are collectively referred to as the "BIRKENSTOCK Trademarks."

| Registration No. | Trademark |
|---|---|
| 4,975,295<br>1,037,893<br>3,105,607 | BIRKENSTOCK |
| 7,051,395 | BOSTON |
| 2,590,411 | BIRK |
| 2,600,060 |  |
| 1,516,450 |  |
| 1,519,901 |  |

9. The above U.S. registrations for the BIRKENSTOCK Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the BIRKENSTOCK Trademarks constitute *prima facie* evidence of their validity

and of Birkenstock's exclusive right to use the BIRKENSTOCK Trademarks pursuant to 15 U.S.C. § 1057(b). The BIRKENSTOCK Trademarks have been used exclusively and continuously by Birkenstock for many years, and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed BIRKENSTOCK Trademarks are attached hereto as **Exhibit 1**.

10. The BIRKENSTOCK Trademarks are distinctive when applied to the Birkenstock Products, signifying to the purchaser that the products come from Birkenstock and are manufactured to Birkenstock's quality standards. Birkenstock has ensured that products bearing the BIRKENSTOCK Trademarks are manufactured to the highest quality standards.

11. Many of the BIRKENSTOCK Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the Birkenstock Products have enabled the Birkenstock brand to achieve widespread recognition and fame and have made the BIRKENSTOCK Trademarks some of the most well-known marks in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Birkenstock brand have made the BIRKENSTOCK Trademarks valuable assets of Birkenstock.

12. Birkenstock has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the BIRKENSTOCK Trademarks. In fact, Birkenstock has expended millions of dollars annually in advertising, promoting, and marketing featuring the BIRKENSTOCK Trademarks. Birkenstock Products have also been the subject of extensive unsolicited publicity resulting from their high quality, performance, and innovative design. As a result, products bearing the BIRKENSTOCK Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products

sourced from Birkenstock. Birkenstock Products have become among the most popular of their kind in the U.S. and the world. The BIRKENSTOCK Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the BIRKENSTOCK Trademarks is of incalculable and inestimable value to Birkenstock.

13. Birkenstock Products are distributed and sold to consumers online through authorized retailers and via the Birkenstock.com website. Sales of Birkenstock Products via the Birkenstock.com website are significant. The Birkenstock.com website features proprietary content, images, and designs exclusive to Birkenstock.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Birkenstock. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Birkenstock to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Birkenstock will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. Birkenstock's success has resulted in significant counterfeiting of the BIRKENSTOCK Trademarks. Consequently, Birkenstock has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Birkenstock has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the

[2] *See* Press Release, Organization for Economic Cooperation and Development, Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[3] *Id.*; *see also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024, U.S. Customs and Border Protection.*
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.

underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

18. Defendants have targeted sales to United States residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, accept payment in U.S. dollars from U.S. consumers, and have sold Counterfeit Products to residents of the United States.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Birkenstock has not licensed or authorized Defendants to use the BIRKENSTOCK Trademarks, and none of the Defendants are authorized retailers of genuine Birkenstock Products.

20. Many Defendants also deceive unknowing consumers by using the BIRKENSTOCK Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Birkenstock Products. Other e-commerce stores operating under the Seller Aliases omit using BIRKENSTOCK Trademarks in the item title to evade enforcement

[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Birkenstock Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

24. E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Birkenstock's enforcement.

E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Birkenstock. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendants are working to knowingly and willfully, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Birkenstock, have knowingly and willfully used and continue to use the BIRKENSTOCK Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States over the Internet.

27. Defendants' unauthorized use of the BIRKENSTOCK Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Birkenstock.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

28. Birkenstock hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered BIRKENSTOCK Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BIRKENSTOCK Trademarks are highly distinctive marks.

Consumers have come to expect the highest quality from Birkenstock Products offered, sold, or marketed under the BIRKENSTOCK Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the BIRKENSTOCK Trademarks without Birkenstock's permission.

31. Birkenstock is the exclusive owner of the BIRKENSTOCK Trademarks. Birkenstock's United States Registrations for the BIRKENSTOCK Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Birkenstock's rights in the BIRKENSTOCK Trademarks and are willfully infringing and intentionally using counterfeits of the BIRKENSTOCK Trademarks. Defendants' willful, intentional, and unauthorized use of the BIRKENSTOCK Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Birkenstock has no adequate remedy at law, and if Defendants' actions are not enjoined, Birkenstock will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BIRKENSTOCK Trademarks.

34. The injuries and damages sustained by Birkenstock have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Birkenstock hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Birkenstock or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Birkenstock.

37. By using the BIRKENSTOCK Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Birkenstock prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the BIRKENSTOCK Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine

Birkenstock Product or is not authorized by Birkenstock to be sold in connection with the BIRKENSTOCK Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Birkenstock Product or any other product produced by Birkenstock that is not Birkenstock's or not produced under the authorization, control, or supervision of Birkenstock and approved by Birkenstock for sale under the BIRKENSTOCK Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Birkenstock, or are sponsored by, approved by, or otherwise connected with Birkenstock;

d. further infringing the BIRKENSTOCK Trademarks and damaging Birkenstock's goodwill; and

2) manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Birkenstock, nor authorized by Birkenstock to be sold or offered for sale, and which bear any of Birkenstock's trademarks, including the BIRKENSTOCK Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

3) Entry of an Order that, upon Birkenstock's request, those with notice of the injunction, including, without limitation, any online marketplace platforms shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the BIRKENSTOCK Trademarks;

4) That Defendants account for and pay to Birkenstock all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BIRKENSTOCK Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Birkenstock be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BIRKENSTOCK Trademarks;

6) That Birkenstock be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 22nd day of June 2026.

Respectfully submitted,

/s/ Berel Y. Lakovitsky
Berel Y. Lakovitsky
N.Y. Bar No. 6224323
Greer, Burns & Crain, Ltd.
90 Broad Street 2nd Floor
New York, NY 10004
312.374.8676 / 312.360.9315 (facsimile)
blakovitsky@gbc.law

*Counsel for Plaintiff*
*Birkenstock US BidCo, Inc.*