**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BIRKENSTOCK US BIDCO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Civil Action No. 26-cv-05237-MKV |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY ELECTRONIC MEANS**

Plaintiff Birkenstock US Bidco, Inc. ("Birkenstock" or "Plaintiff") submits this Memorandum in support of its *ex parte* application for entry of an order to show cause with a Temporary Restraining Order ("TRO"), including a temporary injunction against Defendants enjoining the manufacture, importation, distribution, offering for sale, and sale of infringing and counterfeit products, a temporary asset restraint, expedited discovery, and service of process by electronic means.

## TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 2

A. Plaintiff's Trademarks and Products ..... 2

B. Defendants' Unlawful Activities ..... 3

III. ARGUMENT ..... 4

A. Standard for Temporary Restraining Order and Preliminary Injunction ..... 5

B. Plaintiff Will Likely Succeed on the Merits ..... 5

C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ..... 7

D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ..... 7

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ..... 9

A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement ..... 9

B. A TRO Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BIRKENSTOCK Trademarks Is Appropriate ..... 11

C. Preventing the Fraudulent Transfer of Assets Is Appropriate ..... 11

D. Plaintiff is Entitled to Expedited Discovery ..... 12

E. Providing Notice of these Proceedings, as well as Completing Service of Process by E-mail and Electronic Publication Is Proper ..... 12

1. The Hague Convention Does Not Apply Because the Defendants' Addresses Are Unknown ..... 13

2. Alternatively, Plaintiff Should be Permitted to Provide Notice of the Preliminary Injunction Hearing and Future Motions Electronically ..... 15

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..... 16

VI. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

## CASES

*3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181 (S.D.N.Y. 2020) ........................... 5, 8

*Am. Girl, LLC v. Zembrka*, 118 F.4th 271 (2d Cir. 2024) ........................................................... 4

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) .......................... 10

*Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511 (N.D. Ill. 2020) .................................................... 10

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ................................................. 9

*Cengage Learning, Inc. v. Doe 1*,
2018 U.S. Dist. LEXIS 239799 (S.D.N.Y. Jan. 17, 2018).................................................. 5, 8, 12

*Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262 (S.D.N.Y. 2011) ............................... 6

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
2020 U.S. Dist. LEXIS 158008 (N.D. Cal. Aug. 10, 2020)......................................................... 11

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ............................. 10

*EE Holding Grp. LLC v. Zhongxin*,
2026 U.S. Dist. LEXIS 78287 (N.D. Ga. Feb. 6, 2026) ............................................................ 14

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995) ...................... 4

*Fender Musical Instruments Corp. v. Individuals, et al.*,
2026 U.S. Dist. LEXIS 44257 (S.D.N.Y. Feb. 27, 2026)........................................................... 11

*Fox Shiver, LLC v. Individuals*,
2023 U.S. Dist. LEXIS 118387 (S.D.N.Y. Apr. 25, 2023)......................................................... 11

*Foxmind Can. Enters. Ltd. v. Aproat*, 2026 LEXIS 30881 (S.D.N.Y. Feb. 13, 2026) ................ 14

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)................................................... 10, 12

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27 (2d Cir. 2016) ................................ 7

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827 (7th Cir. 2012) ...................... 15

*Hurlock v. Kelsier Ventures*,
2025 U.S. Dist. LEXIS 132936 (S.D.N.Y. June 27, 2025)......................................................... 15

*In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979)........................................................ 4, 10, 11

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
2022 U.S. Dist. LEXIS 154175 (S.D.N.Y. Aug. 26, 2022)........................................................ 14

*Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co.*,
2019 U.S. Dist. LEXIS 234292 (S.D.N.Y. June 20, 2019)............................................................ 8

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) .................................... 8

*Kravitz v. Deacons*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018) ....................................................... 15

*Lego A/S v. Zuru Inc.*, 2025 U.S. App. LEXIS 32272 (2d Cir. Dec. 10, 2025).............................. 7

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995) ......................... 10

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
2019 WL 7599931 (S.D.N.Y. May 29, 2019) ................................................................................... 9

*Louis Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991)...................................................................... 9

*Lynch v. Mascini Holdings Ltd. (In re Kirwan Offices S.à.r.L.)*,
792 F. App'x 99 (2d Cir. 2019)...................................................................................................... 15

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*,
929 F. Supp. 473 (D.D.C. 1996) ...................................................................................................... 9

*Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012) ................................. 12

*Nifty Home Prods. v. Ladynana U.S.*,
2026 U.S. Dist. LEXIS 88972 (W.D. Pa. Apr. 22, 2026)............................................................... 5

*NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328 (S.D.N.Y. 2014).............................. 8

*Piechowicz v. P'ships, et al.*,
2024 U.S. Dist. LEXIS 176326 (S.D.N.Y. Sept. 24, 2024)......................................................... 14

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987) ............................................... 6

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989)..................................................... 16

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
737 F. Supp. 1521 (S.D. Cal. 1990); *aff'd*, 970 F.2d 552 (9th Cir. 1992).................................. 10

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ......................................... 13

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi,*
164 F.4th 164 (2d Cir. 2025). ........................................................................................................ 15

*Virgin Enters. v. Nawab*, 335 F.3d 141 (2d Cir. 2003)................................................................... 5

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ......................................... 15

*Weili Fang v. Gongsi*, 2021 U.S. Dist. LEXIS 68993 (S.D.N.Y. Apr. 5, 2021) ............................ 9

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536 (5th Cir. 2023) .......... 15

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2nd Cir. 2012) .......... 8

**STATUTES**

15 U.S.C. § 1051 .......... 4

15 U.S.C. § 1057 .......... 6

15 U.S.C. § 1065 .......... 6

15 U.S.C. § 1114 .......... 5

15 U.S.C. § 1116 .......... 7, 9

15 U.S.C. § 1125 .......... 5

28 U.S.C. § 1331 .......... 4

28 U.S.C. § 1338 .......... 4

28 U.S.C. § 1391 .......... 4

**RULES**

Fed. R. Civ. P. 26 .......... 12

Fed. R. Civ. P. 4 .......... 4, 13

Fed. R. Civ. P. 65 .......... 4, 5, 8, 15

**TREATIES**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 .......... 14

**MEMORANDUM OF LAW**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are offering for sale and selling unauthorized and unlicensed products using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Counterfeit Products") through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to United States residents by setting up and operating e-commerce stores using one or more Seller Aliases through which United States residents can and do purchase Counterfeit Products. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. The e-commerce platforms used by Defendants fail to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of Counterfeit Products on their platforms. Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of the registered

[1] The e-commerce store URLs are listed on Schedule A to the Complaint under Online Marketplaces.

Birkenstock trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products on U.S.-facing e-commerce platforms. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a TRO and order Defendants to show cause for why a preliminary injunction should not issue.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks and Products

The Birkenstock brand is steeped in history and tradition, with roots tracing back to 1774. Declaration of Kia Holifield Wimmer (the "Wimmer Decl.") ¶ 4. Plaintiff is well-known throughout the United States and elsewhere as a source of high-quality footwear, and related lifestyle accessories and products, including the iconic ARIZONA sandal and BOSTON clog (collectively, the "Birkenstock Products"). *Id.* ¶ 6.

Plaintiff incorporates a variety of distinctive marks in the design of its various Birkenstock Products. *Id.* ¶ 7. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. *Id.* Plaintiff uses its trademarks in connection with the marketing of the Birkenstock Products, including its federally registered marks (collectively, the "BIRKENSTOCK Trademarks"). *Id.* The U.S. registrations for the BIRKENSTOCK Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* ¶ 8. The BIRKENSTOCK Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned. *Id.*

Birkenstock Products are distributed and sold to consumers online through authorized retailers and via the Birkenstock.com website. *Id.* ¶ 12. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the BIRKENSTOCK Trademarks. *Id.* ¶ 11. Birkenstock Products have also been the subject of

extensive unsolicited publicity resulting from their high quality, performance, and innovative design. *Id.* As a result, products bearing the BIRKENSTOCK Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. *Id.* As such, the goodwill associated with the BIRKENSTOCK Trademarks is of incalculable and inestimable value to Plaintiff. *Id.*

**B. Defendants' Unlawful Activities**

Plaintiff's success has resulted in significant counterfeiting of the BIRKENSTOCK Trademarks. *Id.* at ¶ 13. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers throughout the United States. *Id.*

Plaintiff's well-pleaded allegations establish that Defendants' unlawful actions, occurring at the same time and in the same retail space and manner as one another, amplify and blend together to create a single negative impression on consumers, such that they constitute the same occurrence or series of occurrences under Fed. R. Civ. P. 20, and irreparably harm Plaintiff's goodwill and reputation. *See id.* ¶ 20. Registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. Complaint ¶¶ 19-23. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the BIRKENSTOCK Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the BIRKENSTOCK Trademarks and preserve the *status quo* until a hearing can be held.

Civil actions against counterfeiters by brand owners present special challenges that justify proceeding on an *ex parte* basis. In the absence of an *ex parte* TRO, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts, outside the jurisdiction of this Court, frustrating any potential recovery and "render[ing] fruitless the further prosecution of the action." *In re Vuitton et Fils, S.A.*, 606 F.2d 1, 5 (2d Cir. 1979). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. Personal jurisdiction is proper over Defendants pursuant to Fed. R. Civ. P. 4(k)(2) because Defendants have structured their businesses to target the United States market by accepting payment from and agreeing to ship Counterfeit Products to residents of the United States, and regularly transacting business in the United States. Complaint ¶¶ 2, 18, 26, 27. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-79 (2d Cir. 2024); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995) ("transacting

business in the United States" satisfies minimum contacts); *Nifty Home Prods. v. Ladynana U.S.*, 2026 U.S. Dist. LEXIS 88972, at *9 (W.D. Pa. Apr. 22, 2026).

**A. Standard for Temporary Restraining Order and Preliminary Injunction**

"In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and [TROs]." *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). "To obtain either, [the movant] must show: '(1) a likelihood of success on the merits [. . .]; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.'" *Id.*

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1*, 2018 U.S. Dist. LEXIS 239799, at *4 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

**B. Plaintiff Will Likely Succeed on the Merits**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim under both 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) has two elements. *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). First, a plaintiff must show that its "mark is entitled to

protection." *Id.* Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, the BIRKENSTOCK Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Wimmer Decl. ¶¶ 7-9. The registrations for the BIRKENSTOCK Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* ¶ 8. The registrations for the BIRKENSTOCK Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the BIRKENSTOCK Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the BIRKENSTOCK Trademarks, and none of the Defendants are authorized retailers of Birkenstock Products. *Id.* ¶ 16. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

"Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267 (S.D.N.Y. 2011) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the BIRKENSTOCK Trademarks. The result is the same when considered in light of the Second Circuit's eight enumerated factors to determine whether there is a likelihood of confusion, which include: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective

quality of the products; and (8) sophistication of consumers in the relevant market. *Lego A/S v. Zuru Inc.*, 2025 U.S. App. LEXIS 32272, at *8-9 (2d Cir. Dec. 10, 2025).

Plaintiff has submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to genuine Birkenstock Products and use infringing and counterfeit marks identical to the BIRKENSTOCK Trademarks. Ex. 2, Wimmer Decl. As a result of Plaintiff's efforts, the BIRKENSTOCK Trademarks have achieved tremendous fame and recognition. *See* Wimmer Decl. ¶ 11. Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Birkenstock Products. *See id.* ¶¶ 12-14, 16. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Birkenstock Products from Counterfeit Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Birkenstock Products to purchase Counterfeit Products instead. *Id.* ¶ 16. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 44 (2d Cir. 2016). Accordingly, the relevant factors heavily weigh in Plaintiff's favor. As such, Plaintiff is likely to establish a *prima facie* case of trademark infringement.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Even without the presumption of irreparable harm, however, Plaintiff can easily satisfy this factor. Defendants' unauthorized use of the BIRKENSTOCK Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Wimmer Decl. ¶¶ 24-28. *See Kipling Apparel Corp. v. Boading Baigou*

*Xincheng Younuo Trading Co.*, 2019 U.S. Dist. LEXIS 234292, at *9 (S.D.N.Y. June 20, 2019) ("diminished goodwill and brand confidence, damage to [plaintiff's] reputation," "loss of future sales[,] and loss of exclusive use" are sufficient to establish irreparable harm). The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341-42 (S.D.N.Y. 2014). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Wimmer Decl. ¶ 29.

**D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Cengage Learning*, 2018 U.S. Dist. LEXIS 239799, at *4. As willful infringers, Defendants are entitled to little equitable consideration. *See 3M Co.*, 458 F. Supp. 3d at 197; *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2nd Cir. 2012) ("an infringer [. . .] cannot complain about the loss of ability to offer its infringing product").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "one who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger*

*King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996). Thus, the balance of equities tips decisively in Plaintiff's favor.

Further, the public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

Here, each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g., Weili Fang v. Gongsi*, 2021 U.S. Dist. LEXIS 68993, at *5 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, at *2 (S.D.N.Y. May 29, 2019); *Louis Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991) (recognizing that "upon being

apprised of the institution of a lawsuit by the trademark owner, [a counterfeiter] will conceal his infringing merchandise and either destroy or conceal all records relating to this merchandise, thereby frustrating implementation of the trademark owner's statutory and common law rights."); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). This is because providing notice to the Defendants would render fruitless the further prosecution of the action. *Vuitton*, 606 F.2d 1, 5.

These challenges are compounded "[d]ue to the international aspect of the defendants' business" because "unless the assets are frozen, defendants may hide their allegedly ill-gotten funds[,]" frustrating Plaintiff's ability to obtain an accounting. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990); *aff'd*, 970 F.2d 552, 559 (9th Cir. 1992); *see also Gucci Am. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (affirming a preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeits in China).

Plaintiff has submitted evidence showing that Defendants are selling Counterfeit Products and operate from China or other foreign jurisdictions. *See* Wimmer Decl. ¶ 14. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has

established that Defendants operate offshore in China or other foreign jurisdictions. Wimmer Decl. ¶ 14. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendants set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have received notice of a lawsuit. *See* Declaration of Berel Y. Lakovitsky (the "Lakovitsky Decl.") ¶¶ 5-12. Defendants are also likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, 2020 U.S. Dist. LEXIS 158008, at *25 (N.D. Cal. Aug. 10, 2020); *see* Lakovitsky Decl. ¶ 13. It is also proper for the Court to consider and rely upon actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *See Vuitton*, 606 F.2d at 4; *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008, at *10-11.

### B. A TRO Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BIRKENSTOCK Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all infringing use of the BIRKENSTOCK Trademarks on or in connection with all e-commerce stores operating under the Seller Aliases. Courts have regularly authorized injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Fox Shiver, LLC v. Individuals, et al.*, 2023 U.S. Dist. LEXIS 118387, at *10 (S.D.N.Y. Apr. 25, 2023); *Fender Musical Instruments Corp. v. Individuals, et al.*, 2026 U.S. Dist. LEXIS 44257, at *4-5 (S.D.N.Y. Feb. 27, 2026).

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* asset restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired.[2] Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff

[2] Plaintiff has filed a Motion for Leave to File Under Seal certain documents for this same reason.

all profits realized by Defendants by reason of Defendants' unlawful acts. The Court has the "inherent equitable authority" to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Gucci Am.*, 768 F.3d at 130; *see also Cengage Learning*, 2018 U.S. Dist. LEXIS 239799, at *8-9 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets").

If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. On information and belief, Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiff is Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant such an order." *Cengage Learning*, 2018 U.S. Dist. LEXIS 239799 at *11-12. Furthermore, courts have broad discretion over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to learn Defendants' identities, financial accounts used for their operations, and associated sales. The requested expedited discovery is limited to

what is necessary to prevent further irreparable harm. Discovery of these financial accounts is necessary to ensure that they can be frozen and Defendants' infringing activities will be contained. Plaintiff's asset restraint may have little meaningful effect without the corresponding expedited discovery.

### E. Providing Notice of these Proceedings, as well as Completing Service of Process by E-mail and Electronic Publication Is Proper

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by electronically publishing a link to the Complaint, the proposed Temporary Restraining Order, and other relevant documents on a website, and by sending an e-mail with an attachment of the relevant documents and a link to said website to an e-mail address for each Defendant. Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement, as the Court directs, provided such means is reasonably calculated to give notice. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Props.* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Ninth Circuit reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

1. <u>The Hague Convention Does Not Apply Because the Defendants' Addresses Are Unknown</u>

The United States and the People's Republic of China are both signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, 1969 U.S.T. LEXIS 152 ("Hague Convention"). *See* Lakovitsky Decl. ¶ 14. Article 1 of the Hague Convention states that the Convention does not apply if the address of the person to be served is unknown. *See* Hague Convention, 1969 U.S.T. LEXIS 152, at *16; *see also Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 U.S. Dist. LEXIS 154175, at *17 (S.D.N.Y. Aug. 26, 2022). A defendant's address may be deemed unknown "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Foxmind Can. Enters. Ltd. v. Aproat*, 2026 LEXIS 30881, at *7 (S.D.N.Y. Feb. 13, 2026) (quoting *Kelly Toys Holdings, LLC.*, 2022 U.S. Dist. LEXIS 154175, at *17-18).

Courts have found reasonable diligence where, for example, plaintiffs attempted to "discover a physical address for service of each Defendant located in China by researching the address listed on" their e-commerce stores, and "searching for the address on multiple search engines, including a Chinese service; and searching for potential other addresses of each Defendant on multiple search engines." *Piechowicz v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 176326, at *3 (S.D.N.Y. Sept. 24, 2024); *see also EE Holding Grp. LLC v. Zhongxin*, 2026 U.S. Dist. LEXIS 78287, at *4 (N.D. Ga. Feb. 6, 2026). "No specific set of steps, however, are mandatory." *Kelly Toys Holdings, LLC.*, 2022 U.S. Dist. LEXIS 154175, at *7-8.

Here, Plaintiff investigated each of the available addresses listed by Defendants, and determined that the addresses either could not be located, or there was no identifiable business associated with the Defendants located at that address. *See* Lakovitsky Decl. ¶¶ 15-17.

Specifically, a search for each of the addresses provided for the Defendants was run through Google, Google Maps, and Baidu Maps. *Id.* ¶ 17. Therefore, despite Plaintiff's reasonable diligence to identify and verify Defendants' respective addresses, they remain unknown.

2. Alternatively, Plaintiff Should be Permitted to Provide Notice of the Preliminary Injunction Hearing and Future Motions Electronically

Plaintiff also respectfully requests the Court authorize Plaintiff to provide notice of these proceedings, including notice of the preliminary injunction hearing and all further motions, by electronic publication and e-mail. "'Rule 65(a) does not require service of process,' but requires 'notice to the adverse party.'" *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023); *see also Hurlock v. Kelsier Ventures*, 2025 U.S. Dist. LEXIS 132936, at *5-6 (S.D.N.Y. June 27, 2025) (citing *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012)). As such, the Court can authorize Plaintiff to provide notice of the proceedings, including notice of the preliminary injunction and all future motions, by electronic publication and e-mail. *See Hurlock*, 2025 U.S. Dist. LEXIS 132936, at *5 (finding e-mail "plainly sufficient.").

The Second Circuit's decision in *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi* does not compel a different conclusion. 164 F.4th 164 (2d Cir. 2025). There, the Second Circuit concluded that e-mail service on defendants located in China is prohibited by the Hague Convention. However, the Hague Convention only applies to formal service of process under Rule 4. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988); *Lynch v. Mascini Holdings Ltd. (In re Kirwan Offices S.à.r.L.)*, 792 F. App'x 99, 102 (2d Cir. 2019). In other words, "the Hague Convention only applies to service of process[,]" and "excludes service of judicial documents other than the summons and complaint." *Kravitz v. Deacons*, 587 B.R. 598, 605 (Bankr. S.D.N.Y. 2018).

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and false designation of origin, Plaintiff requests that the Court require Plaintiff to post a bond of no more than ten thousand dollars ($10,000).

## VI. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 25th day of June 2026.

Respectfully submitted,

/s/ Berel Y. Lakovitsky
Berel Y. Lakovitsky
N.Y. Bar No. 6224323
Greer, Burns & Crain, Ltd.
90 Broad Street 2nd Floor
New York, NY 10004
312.374.8676 / 312.360.9315 (facsimile)
blakovitsky@gbc.law

*Counsel for Plaintiff*
*Birkenstock US BidCo, Inc.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

I hereby certify that this document complies with the word-count limit provided for in Local Rule 7.1. Excluding parts excepted by Local Rule 7.1(c), this document contains approximately 4,882 words.

Dated this 25th day of June 2026.

Respectfully submitted,

/s/ Berel Y. Lakovitsky

Berel Y. Lakovitsky
N.Y. Bar No. 6224323
Greer, Burns & Crain, Ltd.
90 Broad Street 2nd Floor
New York, NY 10004
312.374.8676 / 312.360.9315 (facsimile)
blakovitsky@gbc.law

*Counsel for Plaintiff*
*Birkenstock US BidCo, Inc.*